IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

E.A. HAKIM CORP, ERNEST HAKIM
d/b/a E.A. HAKIM,

     Plaintiffs

       v.

NEW WINCUP HOLDINGS, INC. ET.
AL.,

     Defendants.

CIVIL NO. 11-1232 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is New WinCup Holdings, Inc.'s ("WinCup"), motion for summary Judgment. (Docket no. 14). For the reasons outlined below, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

### STANDARD

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a). "Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Meléndez v. Autogermana, Inc., 622 F.3d 46, 49 (1st Cir. 2010) (citing FED.

Civil No. 11-1232 (JAG)                                                    2

R. Civ. P. 56(c)). The objective of summary judgment is to "pierce
the pleadings and to assess the proof in order to see whether
there is a genuine need for trial." Matsushita Elec. Indus. Co.
v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R.
Civ. P. 56(e) advisory committee's note to the 1963 amendment).
The party moving for summary judgment bears the burden of
showing the absence of a genuine issue of material fact. See
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In
prospecting for genuine issues of material fact, we resolve all
conflicts and draw all reasonable inferences in the nonmovant's
favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir.
2008).

     "Once the moving party has properly supported [its] motion
for summary judgment, the burden shifts to the nonmoving
party…." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217
F.3d 46, 52 (1st Cir. 2000) (citing DeNovellis v. Shalala, 124
F.3d 298, 306 (1st Cir. 1997)); Cruz-Claudio v. García Trucking
Serv., Inc., 639 F. Supp. 2d 198, 203 (D.P.R. 2009). The
nonmovant must demonstrate "through submissions of evidentiary
quality[] that a trial worthy issue persists." Iverson v. City
of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Furthermore, on
issues "where the [nonmovant] bears the burden of proof, it
'must present definite, competent evidence' from which a
reasonable jury could find in its favor." United States v. Union

Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007)
(citing United States v. One Parcel of Real Prop., 960 F.2d 200,
204 (1st Cir. 1992)).

     Nevertheless, "the mere existence of *some* alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement
is that there be no *genuine* issue of *material* fact." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also
Carrol v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002). "An
issue is 'genuine' if the evidence on record permits a rational
factfinder to resolve it in favor of either party." Borges ex
rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st Cir. 2010)
(citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8
(1st Cir. 1990)). A fact is "material" if it has the potential
to change the outcome of the suit. See Martínez v. Colón, 54
F.3d 980, 984 (1st Cir. 1995).

     Therefore, summary judgment may be appropriate if the
nonmoving party's case rests merely upon "conclusory
allegations, improbable inferences, and unsupported
speculation." Forestier Fradera v. Municipality of Mayagüez, 440
F.3d 17, 21 (1st Cir. 2006) (citing Benoit v. Technical Mfg.
Corp., 331 F.3d 166, 173 (1st Cir. 2003)). It is important to
note that, throughout this process, courts cannot make
credibility determinations or weigh the evidence, as these are

jury functions and not those of a judge. <u>Anderson</u>, 477 U.S. at 255.

## FACTUAL AND PROCEDURAL BACKGROUND

E.A. Hakim ("Plaintiff") filed this action due to the termination of a brokerage agreement. Plaintiff asserts that he is entitled to relief pursuant to Puerto Rico's Sales Representative Act, 10 P.R. Laws Ann. §§ 279-279h ("Law 21") and Puerto Rico's Dealers' Contracts Act, 10 P.R. Laws Ann. §§ 278-278d ("Law 75").

WinCup avers that the Court should summarily dismiss Plaintiff's suit because the brokerage agreement between the parties was non-exclusive and because the parties lack an established relationship that could be deemed a dealership contract.

## ANALYSIS

### A. Law 21

WinCup posits that the brokerage agreement between the parties fails to create an exclusive relationship between the parties. Law 21 states that "no principal or grantor may terminate [the principal-sales representative] relationship, or directly or indirectly perform any act that may impair the established relationship, or refuse to renew said contract ..., except for just cause." P.R. Laws Ann. tit. 10, § 279a. If the principal terminates its commercial relationship with an

Civil No. 11-1232 (JAG)                                                    5

exclusive sales representative without just cause, it is liable
for the damages caused. Id. § 279c.

    According to Law 21, a sales representative is "[a]n
independent entrepreneur who establishes a sales representation
contract of an exclusive nature, with a principal or grantor,
and who is assigned a specific territory or market, within the
Commonwealth of Puerto Rico." Id. § 279(a). A sales
representation contract is defined as an agreement established
between a sales representative and a principal, through which,
and regardless of the way in which the parties establish,
delineate or formalize said agreement, the party of the first
part  commits himself to making a reasonable effort and due
diligence in the creation or expansion of a market which is
favorable for the products that the principal sells, directed at
capturing clientele to offer it a product or service marketed by
him in Puerto Rico, and the party of the second part is bound to
comply with the commitments that may result from the sales
representative's efforts and coordination and to pay the
previously-accorded commission or remuneration. Id. § 279(c).

    The Puerto Rico Supreme Court outlined the characteristics
a sales representative should bear to enjoy protection under Law
21. IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 446 (1st Cir.
2010)(citing Cruz-Marcano v. Sánchez-Tarazona, 172 D.P.R. 526
(2007)). According to the Puerto Rico Supreme Court, a sales

Civil No. 11-1232 (JAG)                                                     6

representative is a business intermediary who: (1) exclusively promotes and processes contracts on behalf of a principal in an ongoing, stable manner; (2) operates in a defined territory or market; (3) is responsible for creating or expanding the market for the principal's products through promotional efforts; (4) receives commissions for his services or a pay previously agreed upon by the parties; and (5) operates as an independent merchant. Id. (citing Cruz-Marcano, 172 D.P.R. at 548-49).

Moreover, a sales representative must have the authority to procure and conclude orders that bind the principal. IOM Corp., 627 F.3d at 448 (citing P.R. Laws Ann. tit. 10, § 279(c) (stating that in a sales representation agreement, the principal "is bound to comply with the commitments that may result from the sales representative's efforts and coordination"); Cruz-Marcano, 2007 TSPR 198, 172 D.P.R. at 546 (explaining that a Law 21 sales representative procures and concludes orders on behalf of the principal)).

WinCup argues that Plaintiff is not entitled to protection under Law 21 for two reasons: (1) exclusivity was lacking and (2) the brokerage agreement that the parties signed was the standard brokerage agreement that WinCup used for all other brokers nationwide at the time. In contrast, Plaintiff states that at some point in the relationship between the parties, Plaintiff assumed the responsibilities of WinCup's local

Civil No. 11-1232 (JAG)                                    7

distributor. Plaintiff proceeds to embark on an analysis of the Brokerage Agreement. Plaintiff argues that the first and second clauses of the Brokerage Agreement leave no doubt that the relationship between Plaintiff and WinCup was exclusive. The first clause reads:

> Appointment:
> The Company hereby appoints Broker as a commission broker for the sole purpose of soliciting orders for those particular products manufactured and sold by Company which are referred to on Exhibit A annexed hereto (Hereinafter called the "Products") within the Territory listed on Exhibit B annexed hereto, to the classes of trade listed on Exhibit C annexed hereto, subject to the terms, provisions, and conditions contained herein below.

The second clause reads:

> Broker' Facilities; Conflict of Interest:
> During the period of this Agreement, Broker shall maintain sales and services facilities adequate to represent Company in the solicitation of orders for the Products. Broker shall use its best efforts to develop business in, promote the sale of, and obtain orders for the sale of Products within the Territory, and in connection therewith shall not in any event solicit orders for, or sell goods, that are competitive with the Products.
>
> Additionally, Broker shall inform Company of any potential conflict of interest because of its representation or potential representation of any other company which manufactures or distributes products which, although not listed on Exhibit A, are competitive to other products manufactured or distributed by the Company.

Civil No. 11-1232 (JAG)                                        8

Plaintiff posits that because WinCup limited competition from
Plaintiff's other products this obviously entailed granting
exclusivity as a sales representative. The Court does not agree
with Plaintiff. The clauses cited above do not suggest any grant
of exclusivity, these clauses merely limit Plaintiff's ability
to solicit orders for, or sell goods that compete with WinCup's
products.

    Plaintiff proceeds to argue that clauses three, four, five,
and six, when read together, state that Plaintiff could seek and
obtain orders for WinCup's products and that WinCup would comply
with these orders as long as these were secured with WinCup's
established prices, terms, and conditions. It seems that
Plaintiff is attempting to argue around the requirement that a
sales representative must have the ability to conclude orders
that bind the principal by arguing that the contract's
limitation on Plaintiff's ability to enter into binding
contracts did not apply to contracts obtained by Plaintiff that
complied with the terms and conditions provided by the contract.
The Court will now turn to the clauses cited by Plaintiff.
Clause three through six read:

3. Sales Through Broker:
    Unless otherwise specifically authorized in writing
    by Company, Broker shall have no authority to
    solicit or take orders for the sale of Products
    except at Company's established prices, allowances,
    terms, and discounts and in accordance with
    Company's standard conditions of sale as set forth

> from time to time in Company's quotations, price
> sheets, or printed forms. All promotional offerings
> shall be made strictly in accordance with the terms
> established by Company. Broker shall not extend
> credit to any customer nor collect payments on
> account or orders for Products solicited by Broker.
> All sales resulting from solicitation of orders by
> Broker hereunder shall be for direct shipment to
> the customer from Company.

4. Transmittal of Orders:
> With respect to all orders received by Broker on
> behalf of Company, Broker shall promptly send the
> original copy thereof to Company at the above
> address or to such other office as designated in
> writing by Company. All such orders shall be
> subject to acceptance by Company. Broker shall upon
> Company's request, obtain information for Company
> as to the credit of any customer from whom orders
> for Products have been solicited by Broker.

5. Collection of Customer Payments:
> Upon request, Broker shall assist the Company in
> effecting prompt and full payment by any customer
> to Company for all deliveries of Products sold.

6. Restriction on Contracts:
> Broker shall not under any circumstance enter into
> any contracts, agreements, or understandings,
> except as provided in Paragraph 3 above, that will
> in any way obligate Company or any parent,
> subsidiary, affiliate or related company thereof
> without the prior express written consent of
> Company.

The Court disagrees with Plaintiff once more. These clauses are

transparent in that Plaintiff lacked the ability to complete

orders that were binding upon WinCup.

The Court notes that the contract clearly states that

Plaintiff operates in a defined territory, receives commissions

for his services, and operates as an independent contractor.

Civil No. 11-1232 (JAG)                                              10

Moreover, the parties do not dispute that Plaintiff was
responsible for creating or expanding the market through
promotional efforts. The parties' only disagreement revolves
around the issue of exclusivity and Plaintiff's ability to enter
into contracts that were binding upon WinCup.

Exclusivity is generally apparent either from the contract
or from the arrangements agreed upon between the parties. IOM
Corp, 627 F.3d at 449 (citing Orba Inc. v. MBR Industries, Inc.,
49 F.Supp.2d 67, 71 (D.P.R. 1999). The exclusivity requirement
is met where neither the principal merchant nor third parties
are allowed to sell the product in the same territory or market
in which the sales representative operates. IOM Corp, 627 F.3d
at 449 (citing Cruz-Marcano, 172 D.P.R. at 537-38).

After reading the contract, the Court does not readily
understand that Plaintiff was awarded exclusivity. Similarly,
the Court finds no statement in the contract that Plaintiff
could enter into agreements that would be binding upon WinCup.
Therefore, the Court concludes that although Plaintiff meets
several of the required criteria to be considered an exclusive
sales representative, Plaintiff's inability to bind WinCup and
lack of exclusivity militate against such a conclusion.

The Court is aware that Plaintiff filed the signed
statement of Ernest Hakim stating that he was the exclusive
sales representative for WinCup. (Docket No. 34-2). However,

because Law 21 is subject to the Puerto Rico Commerce Code, which requires that the essential elements of a contract be confirmed in writing. <u>Innovation Marketing v. Tuffcare Inc.</u>, 31 F.Supp.2d 218, 223 (D.P.R. 1998)(citing <u>Vila & Hnos., Inc. v. Owens Ill. De</u>, P.R. 17 P.R. Official Trans. 987 997-1000 (1986); <u>Garita Hotel Limited Partnership v. Ponce Federal</u>, 122 F.3d 88, 89 (1st Cir.1997)). "The exclusivity clause is undoubtedly an essential covenant of the agreement" and verbal evidence under the Commerce Code is insufficient without corroboration. <u>Innovation Marketing</u>, 31 F.Supp.2d at 223 (citing <u>Garita Hotel v. Ponce Federal Bank, F.S.B.</u>, 954 F.Supp. 438, 452-455 (D.P.R. 1996), *aff'd*. at 122 F.3d 88 (1st Cir. 1997)).

The Court understands that Plaintiff was not an exclusive sales representative. As a result, the Court **GRANTS** WinCup's request for summary judgment on this issue.

**B. Law 75**

Plaintiff also avers that he was a dealer under Law 75. The Supreme Court of Puerto Rico stated that to be dealer something beyond mere contact with the product as it moves down the chain from manufacturer to supplier is necessary. <u>Triangle Trading Co., Inc. v. Robroy Industries, Inc.</u>, 200 F.3d 1, 4 (1st Cir. 1999)(citing <u>Roberco, Inc. & Roberto Colón v. Oxford Industries, Inc.</u>, 122 D.P.R. 115 (1988)). The Puerto Rico Supreme Court also defined a dealer under Law 75 as "an independent entrepreneur

Civil No. 11-1232 (JAG)                                          12

who has established a continuing relationship, either fixed or

indeterminate, with another principal for the distribution of a

product or service .... geared to create, develop, and

coordinate a market and to obtain new clients." Triangle Trading

Co., 200 F.3d at 4 (citing Roberco, 122 D.P.R. 120-32).

Furthermore, the Puerto Rico Supreme Court derived the following

characteristics of a dealership: promotion of the product,

keeping an inventory, fixing prices, delivery and billing

responsibilities, authority to extend credit, advertising

campaigns, assumption of risk, purchasing the product,

maintaining facilities, and offering product-related services to

clients. Triangle Trading Co., 200 F.3d at 4-5 (citing Roberco,

122 D.P.R. 131-32)(citations omitted); see also Accessories &

Communication Systems, Inc. v. Nortel Cala Inc., 85 F.Supp.2d

95, 98 (D.P.R. 2000)(citing J. Soler Motors Inc. v. Kaiser Jeep

International Corp., 108 D.P.R. 134, 142 (1978)(listing the

following factors as required to be a dealer under Law 75: (1)

activities necessary to the transportation of the products from

the manufacturer to the consumer or to some point in between;

(2) publicity;(3) market coordination;(4) merchandise

delivery;(5) collections;(6) keeping inventory;(7) promotion;(8)

closing of sales contracts). "Although no single factor is

deemed to be conclusive, both the creating of a favorable market

and the gaining of consumers for a product or a service, have

Civil No. 11-1232 (JAG)                                                    13

been regarded by this court as the two most salient criterion…"
Accessories & Communication Systems, 85 F.Supp.2d at 98 (citing
Triangle Trading Co., Inc. v. Robroy Industries, Inc., 952
F.Supp. 75, 77 (D.P.R. 1997.)).

        According to Plaintiff, WinCup has recognized the existence
of a dealership relationship in Caroline Williamson's statement
in support of the motion for summary judgment. (Docket No. 14-
3). In her declaration, Ms. Williamson acknowledges that
Plaintiff brokered purchases for his own account but was under
no obligation to make those purchases. Ms. Williamson also
stated that WinCup does not follow or exert any control over
what Plaintiff does with the purchased product. Plaintiff seems
to argue that this statement clearly shows that Plaintiff was a
dealer. Plaintiff follows up his statement by positing that at
some point, a long time ago, the parties agreed that Plaintiff
would purchase inventory, pay for it, pay for his share of the
transportation, storage, marketing, distribution, delivery, and
collection of the purchase price thereby becoming a dealer.
Plaintiff further states that in return for being a dealer he
was given a 5 to 7% discount off the purchase price.

        In contrast, WinCup argues that Plaintiff is not a proper
Law 75 dealer because the relationship between the parties is
not "established". WinCup also argues that a Law 75 relationship
is characterized by its "continuity, stability, mutual trust,

Civil No. 11-1232 (JAG)                                    14

coordination between both parties as independent entrepreneurs,
devoid of hierarchical subordination, and in whom … [ the
principal] has made a substantial investment." J. Soler Motors,
Inc. v. Kaiser Jeep International Corp., 8 P.R. Offic. Trans.
138, 108 D.P.R. 134 (1978). WinCup further adds that "unilateral
efforts to sell a product and develop a market are not
sufficient, alone, to create a dealer relationship within the
purview of Law 75." Euromotion, Inc. v. BMW of North America,
Inc., 136 F.3d 866, 871 (1st Cir. 1998). WinCup posits that in
this case there is no established relationship between Plaintiff
and WinCup for the distribution of WinCup products in Puerto
Rico because the parties have not signed an agreement, nor have
the parties entered into discussions regarding such an
arrangement. As a result, WinCup posits that there has never
been a meeting of the minds between the parties in order for any
contract to be binding.

     The parties present opposing arguments regarding whether or
not Plaintiff kept an inventory. WinCup states that Plaintiff
did not keep inventory but rather that Plaintiff brokered sales
to himself and WinCup is unaware of what Plaintiff did with the
products he purchased. In contrast, Plaintiff states that he
kept an inventory and that he paid for the transportation,
storage, marketing, distribution, delivery, and collection of
payment. However, Mr. Hakim's declaration only states that

Civil No. 11-1232 (JAG)                                              15

Plaintiff kept an inventory and that he assumed the costs of
inventory, storage, freight, delivery, and collection of debts.
Thus, the Court understands that Plaintiff did not undertake any
marketing or promotional duties.

In examining the Brokerage Agreement, the Court has already
determined that Plaintiff lacked the ability to bind WinCup by
closing sales agreements. Similarly, the contract states that
Plaintiff was unable to fix prices or extend credit. (Docket No.
14-1, p. 1-2). The contract also states that all sales resulting
from solicitation by Plaintiff were for direct shipment to
customers. (Docket No. 14-1, p. 3). Similarly, the Brokerage
Agreement states that promotional offerings had to be made in
strict compliance with WinCup's established terms. (Docket No.
14-1, p. 3). However, the existence of the Brokerage Agreement
is not necessarily determinative because Plaintiff's argument is
that they enjoyed a distribution agreement in addition to the
Brokerage Agreement. Moreover, the lack of a formal agreement is
not a bar to the protections of Law 75. Madelux Intern., Inc. v.
Barama Co. Ltd., 364 F.Supp.2d 68, 74-75 (D.P.R. 2005)(citing
Homedical Incorporated v. Sarns/3M Health Care, Inc., 875
F.Supp. 947, 950 (D.P.R. 1995)).

WinCup argues in its reply that Plaintiff has not suffered
any remediable injury under Law 75. In essence, WinCup states
that because Plaintiff and WinCup have continued a commercial

Civil No. 11-1232 (JAG)                                                16

relationship, Plaintiff lacks an actionable claim. In order to
support his argument, Plaintiff cites to two cases that deal
with the Petroleum Marketing Services Act. The Court understands
that these cases are not readily analogous to the case at hand
and as a result they fail to sway the Court's opinion.

WinCup also argues that Plaintiff's complaint did not
allege that the distributorship was exclusive and failed to
state anything regarding his commission or his 5-7% discount.
Lastly, WinCup argues that Mr. Hakim's affidavit is insufficient
to create a trial worthy issue. The Court does not readily agree
with WinCup's arguments. The Court understands that the record
presently before it is too sparse in order for the Court to
determine whether or not Plaintiff was a distributor. Moreover,
the Court believes that the complaint states that the loss of
its distributorship deprived Plaintiff of benefits which would
include the 5-7% discount and any commission he may have
received. However, the Court agrees with WinCup in that the
complaint does not allege that Plaintiff enjoyed an exclusive
distributorship and as a result Plaintiff is limited from
arguing that it enjoyed an exclusive distributorship at this
juncture.

WinCup also seems to argue that Plaintiff's opposition is
premised on Mr. Hakim's self-serving affidavit and that his
affidavit is insufficient to defeat a motion for summary

Civil No. 11-1232 (JAG)                                                17

judgment. The First Circuit held that a self-serving affidavit
could defeat a summary judgment motion if the affidavit contains
more than the allegations made in the complaint and provides
specific factual information based upon personal knowledge.
Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46,
53 (1st Cir. 2000). Although, Mr. Hakim's affidavit comes
dangerously close to being rejected as it barely contains more
than the allegations made in the complaint, the Court reckons
that is should be permitted as it is based on personal
knowledge.

     The Court believes that there is a genuine issue of
material fact regarding whether Plaintiff maintained an
inventory. Additionally, the Court is unclear as to whether or
not Plaintiff fulfilled several of the Roberco factors. As a
result, the Court understands that it is not in a position to
determine whether or not Plaintiff was a distributor based on
the record presently before it. Thus, the motion for summary
judgment is hereby **DENIED** regarding the Law 75 question.


                              **CONCLUSION**

     For the reasons stated above, WinCup's motion for summary
judgment is **GRANTED IN PART AND DENIED IN PART**.


**IT IS SO ORDERED.**

Civil No. 11-1232 (JAG)                                           18


In San Juan, Puerto Rico, this 28th day of September, 2012.


                                    S/ Jay A. García-Gregory
                                    JAY A. GARCÍA-GREGORY
                                    United States District Judge